# Exhibit "A"



**CT Corporation**
**Service of Process Notification**
08/15/2022
CT Log Number 542113946

## Service of Process Transmittal Summary

| | |
|---|---|
| **TO:** | Rebecca Thompson<br>UnitedHealth Group Incorporated (111504190770700600)<br>9900 Bren Rd E Ste 300W, MN008-T502<br>Minnetonka, MN 55343-9693 |
| **RE:** | **Process Served in Florida** |
| **FOR:** | UnitedHealthcare Insurance Company (301800099745000000048)  (Domestic State: CT) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | NEUROSURGICAL CONSULTANTS OF SOUTH FLORIDA, L.L.C. vs. UNITEDHEALTHCARE INSURANCE COMPANY |
| **CASE #:** | 502022CA005712 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **PROCESS SERVED ON:** | C T Corporation System, Plantation, FL |
| **DATE/METHOD OF SERVICE:** | By Electronic Receipt on 08/15/2022 at 00:00 |
| **JURISDICTION SERVED:** | Florida |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 08/15/2022, Expected Purge Date: 09/14/2022 |
| | Image SOP |
| | Email Notification,  Administrative Assistant  legalmail@uhg.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>1200 South Pine Island Road<br>Plantation, FL 33324<br>877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

*22-000296173*

CHIEF FINANCIAL OFFICER
JIMMY PATRONIS
STATE OF FLORIDA

---

NEUROSURGICAL CONSULTANTS OF SOUTH
FLORIDA, L.L.C.

PLAINTIFF(S)

VS.

UNITEDHEALTHCARE INSURANCE COMPANY

DEFENDANT(S)

_____/

SUMMONS

**CASE #:**    50-2022-CA-005712
**COURT:**     CIRCUIT COURT
**COUNTY:**    PALM BEACH
**DFS-SOP #:** 22-000296173

# <u>NOTICE OF SERVICE OF PROCESS</u>

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said  process was received in my office by ELECTRONIC DELIVERY on Friday, August 12, 2022 and a copy was forwarded by ELECTRONIC DELIVERY on Monday, August 15, 2022 to the designated agent for the named entity as shown below.

UNITEDHEALTHCARE INSURANCE COMPANY
DONNA MOCH
1200 SOUTH PINE ISLAND ROAD
PLANTATION, FL 33324

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule  #1.080**

Jimmy Patronis
Chief Financial Officer

JAMES  KADY
KDPROCESS
2957 CAPITAL PARK DRIVE
SUITE 7
TALLAHASSEE, FL 32310

BL1

IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CASE NO.: 50-2022-CA-005712

DIVISION: AK

NEUROSURGICAL CONSULTANTS OF
SOUTH FLORIDA, L.L.C.,

        Plaintiff,

vs.

UNITEDHEALTHCARE INSURANCE
COMPANY, a foreign corporation,

        Defendant.

_____/

## CIVIL ACTION SUMMONS

THE STATE OF FLORIDA
To Each Sheriff of the State:

        YOU ARE COMMANDED to serve this summons and a copy of the Complaint in this action on Defendant:

**UNITEDHEALTHCARE INSURANCE COMPANY**
**Chief Financial Officer**
**P.O. Box 6200 (32314-6200)**
**200 E. Gaines Street**
**Tallahassee, FL 32399-0000**

        A lawsuit has been filed against this corporation.  The Defendant is required to serve written defenses to the Complaint on RICHARD P. HERMANN, II, ESQ., Shapiro, Blasi, Wasserman & Hermann, P.A., Plaintiff's attorney, whose address is 7777 Glades Road, Suite 400, Boca Raton, Florida 33434, within twenty (20) days after service of summons on the Defendant, and responses to Plaintiff's First Request for Production to Defendant, Plaintiff's First Set of Interrogatories to Defendant, and Plaintiff's First Requests for Admission to Defendant within forty-five (45) days of service of summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter.   If the Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on ___**Aug 04 2022**___, 2022.

JOSEPH ABRUZZO,
Clerk of the Circuit Court

BY: _____
As Deputy Clerk   **JOSIE LUCCE**

## AMERICAN WITH DISABILITIES ACT OF 1990
## ADA NOTICE REQUIREMENT

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Diana Sobel, Room 20140, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

IN THE CIRCUIT COURT FOR THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

IN RE: STANDING ORDER FOR
CASE MANAGEMENT FOR SUBMISSION
OF AGREED CASE MANAGEMENT PLAN FOR
CASES FILED ON OR AFTER APRIL 30, 2021

_____   _____ /

**STANDING ORDER FOR CASE MANAGEMENT AND SUBMISSION OF AGREED
CASE MANAGEMENT PLAN IN CIVIL CASES
IN THE FIFTEENTH JUDICIAL CIRCUIT FILED ON OR AFTER APRIL 30, 2021
(DCMSO)**

Pursuant to Florida Rule of Civil Procedure 1.200(a), Florida Rule of General Practice and Judicial Administration 2.545, and Administrative Order 3.107 entered by the Chief Judge of this Circuit, the parties are informed of the following information and procedures applicable to civil lawsuits filed in the Circuit Court on or after April 30, 2021:

1. **SERVICE OF THIS ORDER.** The Plaintiff is directed to serve a copy of this Order with each Summons issued in this case. One copy of this Order is to be filed with the Clerk of the Circuit Court with proof of service.

2. **CIVIL CASE MANAGEMENT SYSTEM.** The Supreme Court of Florida has established guidelines for the prompt processing and resolution of civil cases. This Court has adopted a case management system to help meet those guidelines. In contested cases, the parties are required to participate in the case management system. The case management system requires early consultation and cooperation among the parties for the preparation and submission of an Agreed Case Management Plan and early involvement by the Court. The Agreed Case Management Plan requires the parties to identify a case track, confer in good faith and attempt to narrow the matters in controversy, identify the issues that require direct involvement by the Court, and establish a schedule for addressing those issues.[1] The Agreed Case Management Plan may be accessed at the Court's website at: https://15thcircuit.com/civil-differentiated-forms-and-orders.

Unless all of the Defendants have been served and have been defaulted or dropped, an Agreed Case Management Plan must be submitted to the assigned divisional queue via the Court's online scheduling system (OLS) as an attachment, in PDF format, to a proposed Order Accepting Agreed Case Management Plan on or before 130 days from the date of filing of the initial complaint. If the parties are unable to agree on an Agreed Case Management Plan by the applicable deadline, a

---

[1] Case Track options include Expedited, Streamlined, General, or Complex. Case Tracks have been established in order to comply with the case disposition standards set forth in Florida Rule of General Practice and Judicial Administration 2.250(a)(1)(B).

case management conference will be scheduled by the Court or the Court will review and issue an Order Implementing Case Management Plan without agreement of the Parties. No matters that arise as a result of this standing order, including lack of agreement, will be set on the Court's Uniform Motion Calendar and will, instead, be settled by the Court either at the case management conference or via an Order Implementing Case Management Plan without agreement of the parties. If a case management conference is scheduled, attendance by trial counsel and those parties who are not represented by counsel is mandatory.

If all Defendants are served and defaulted or dropped, the Plaintiff will file the appropriate documentation to pursue a Default Final Judgment within 130 days of the filing of the complaint and Final Judgment is to be entered or set for hearing within 150 days of the filing of the complaint.

3. **MEDIATION/ALTERNATIVE DISPUTE RESOLUTION (ADR)**.  ADR provides parties with an out-of-court alternative to settling disagreements. Mediation is a type of ADR wherein an independent third party attempts to arrange a settlement at a conference between the parties. The Court requires the parties to participate in Mediation prior to trial unless the parties agree to another form of ADR.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, on this 26 day of April, 2021.

**Administrative Circuit Judge**

IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT, IN AND FOR PALM
BEACH COUNTY, FLORIDA

CASE NO.:

DIVISION:

NEUROSURGICAL CONSULTANTS OF
SOUTH FLORIDA, L.L.C.,

       Plaintiff,

vs.

UNITEDHEALTHCARE INSURANCE
COMPANY
a foreign corporation,

       Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Neurosurgical Consultants of South Florida, L.L.C. ("Plaintiff"), a Florida corporation, sues Defendant UnitedHealthcare Insurance Company, a foreign corporation ("Defendant"), and alleges as follows:

### Nature of Action

1. This action concerns the unreasonably low rate at which Defendant reimbursed Plaintiff for medically necessary services Plaintiff provided to a patient, T.M. ("Patient"), covered under a group health insurance policy insured, operated, and/or administered by Defendant.

2. Plaintiff provided medically necessary services to Patient consisting of two different complex surgical procedures relating to a malignant brain tumor, specifically a grade 4 glioblastoma. These surgical procedures included: (1) a right temporal stereotactic guided

craniotomy with resection of the brain tumor and evacuation of a hematoma; and (2) a right-sided BrainPath awake stereotactic craniotomy with Gleolan fluoroscopy for brain tumor resection; and other related procedures.

3.     Both surgeries were performed on an urgent basis; after Patient was admitted to in-network hospitals through the emergency department and did not have the ability and opportunity to choose a participating provider at the hospitals who was available to treat Patient; and/or as a continuation of care stemming from Plaintiff's initial treatment of Patient.

4.     Plaintiff performed the surgeries with the understanding and expectation that Defendant would reimburse Plaintiff for the services it provided to Patient at rates equal to the fair market or reasonable value of Plaintiff's services. Plaintiff's understanding and expectation in this regard was based upon the emergency or urgent nature of the services, Defendant's preauthorization of the services, the prior course of performance between the parties, and the requirements of Florida and federal law.

5.     Instead, Defendant wrongfully paid Plaintiff at rates below: (1) the "usual and customary provider charges" in violation of Section 627.64194 and 641.513(5), Florida Statutes, for claims subject to those sections; and/or (2) the fair market or reasonable value of the services required under *quantum meruit* by the implied-in-fact and/or implied-in-law contracts between the parties, for claims not subject to Section 627.64194 and 641.513(5).

6.     Section 641.513(5) imposes a requirement on managed care organizations licensed as HMOs "to ensure that the non-participating providers are adequately paid for a service they are required by law to perform." *Merkle v. Health Options,* 940 So. 2d 1190, 1196 (Fla. 4th DCA 2006). Section 627.64194(4) incorporates by reference the reimbursement requirements of Section 641.513(5) and applies them to claims for both emergency and non-emergency services submitted

by non-participating hospital-based providers to managed care organizations operating preferred provider networks or organizations (commonly known as "PPOs").

7.     Florida has a strong public policy of protecting both patients who receive medical services in Florida and physicians who provide medical services in Florida.

8.     Sections 627.64194 and 641.513(5) further Florida's public policy by protecting members of managed care organizations from being balance billed for services subject to those statutes, and by protecting non-participating providers who provide services subject to those statutes from being unfairly or inadequately compensated for services they are legally required to perform.

9.     Defendant, as a managed care organization licensed and/or operating in the state of Florida, has a duty under Sections 627.64194 and 641.513(5) to reimburse Plaintiff at rates that are, at a minimum, equivalent to the "usual and customary provider charges for similar services in the community," which requires payment at fair market value. *Baker Cnty. Med. Servs. v. Aetna Health Mgmt., LLC*, 31 So. 3d 842,845–46 (Fla. 1st DCA 2010).

10.    In this action, Plaintiff is seeking to have Defendant comply with its obligation to pay Plaintiff at rates that represent the usual and customary provider charges required by Sections 627.64194 and 641.513(5) and/or the fair market or reasonable value of Plaintiff's services required under *quantum meruit* based on the parties' implied-in-fact and/or implied-in-law contracts.

11.    For the claims at issue in this action, the conduct and relationship of Plaintiff and Defendant and the surrounding circumstances created an enforceable contract pursuant to which Defendant agreed to pay Plaintiff at rates that represent the fair market or reasonable value of Plaintiff's services.

12.     Further, for the claims at issue in this action, Plaintiff was a non-participating provider with Defendant and, as a result, did not agree to accept discounted rates from Defendant for its services and did not agree to be bound by Defendant's reimbursement policies or rate schedules.

13.     Nevertheless, Defendant has not paid Plaintiff the fair market or reasonable value of its services.

14.     The impact of Defendant's underpayments on the claims at issue is considerable and has left a balance due from Defendant exceeding the minimum jurisdictional limits of this Court.

## **Parties**

15.     Plaintiff is a Florida professional limited liability company with its principal place of business located in Palm Beach County, Florida.

16.     Defendant is a foreign for-profit corporation with its principal address located at 185 Asylum Street, Hartford, CT 06103. Defendant is, and at all material times was, a health insurer and/or health claims administrator actively engaged in the transaction of health insurance servicing in the state of Florida and providing managed healthcare products and administrative services throughout the state of Florida, including in Palm Beach County, Florida. Defendant holds, and at all material times held, a certificate of authority as a life and health insurer in the state of Florida, as reflected in the records of the Florida Office of Insurance Regulation.

## **Jurisdiction and Venue**

17.     The amount in controversy exceeds the sum of $30,000, exclusive of interest and costs.

18.     Defendant operates, conducts, engages in, and carries on business in the state of Florida and has offices and agencies throughout the state of Florida.

19.     Venue is proper in Palm Beach County, Florida, because the Plaintiff provided the medical services at issue to Patient in Palm Beach County and because the payments to Plaintiff for those services were due in Palm Beach County.

### Facts

20.     Plaintiff, through its physicians, provides medical services, including emergency services and care, neurosurgical services, and other surgical services, to patients in Palm Beach County, Florida, including at Boca Raton Regional Hospital and Delray Medical Center, located in Palm Beach County, Florida.

21.     Plaintiff's physicians are licensed medical doctors practicing in the state of Florida.

22.     Plaintiff's physicians are board-certified and/or fellowship trained neurosurgeons who collectively treat a wide range of neurological conditions, including brain, neck, and spinal injuries; brain hemorrhages; brain tumors; cervical and spinal cord tumors; and other disorders and trauma relating to or involving the nervous system.

23.     Both Florida and federal law obligate Plaintiff's physicians to examine any individual presenting to the emergency department and to provide treatment to any individual with an emergency medical condition, regardless of the individual's insurance coverage or ability to pay. This legal obligation furthers Florida's strong public policy of protecting patients who need medical services in Florida.

24.     Defendant provides coverage for healthcare services provided to members of its managed healthcare products in the state of Florida.

25.     In exchange for premiums, fees, and/or other forms of compensation, Defendant agrees to administer claims and provide reimbursement for healthcare services rendered to members of its health insurance policies.

26.     Upon information and belief, at all material times, Patient was a resident of Palm Beach County, Florida.

<div align="center">

*Patient's PPO Policy*

</div>

27.     At all material times, Patient was a member of a group health insurance policy, insured and administered by Defendant, which policy provided coverage for services received by Patient and provided in the state of Florida (the "Policy").

28.     Upon information and belief, the Policy is a preferred provider organization ("PPO") policy as defined in and regulated by Chapter 627, Florida Statutes.

<div align="center">

*Relevant Statutes*

</div>

29.     Section 395.1041 requires hospitals and other emergency medical services providers to provide emergency services and care to patients for any emergency medical conditions from which those patients may be suffering as outlined in Section 395.1041(3).

30.     Section 641.513(5), Florida Statutes, provides as follows:

Reimbursement for services pursuant to this section by a provider who does not have a contract with the health maintenance organization shall be the lesser of:

(a)   The provider's charges;

(b)   The usual and customary provider charges for similar services in the community where the services were provided; or

(c)   The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim.

Such reimbursement shall be net of any applicable copayment authorized pursuant to subsection (4).

31.     Florida courts have interpreted the phrase "usual and customary provider charges for similar services in the community where the services were provided" under Section 641.513(5) to require payment of "fair market value" for the services rendered. *Baker Cnty. Med. Servs. v. Aetna Health Mgmt., LLC,* 31 So. 3d 842, 845–46 (Fla. 1st DCA 2010).

32.     Section 627.64194(4) incorporates by reference the above dictates of Section 641.513(5) concerning the reimbursement of non-participating providers with respect to emergency and non-emergency services provided to patients covered under a PPO policy as outlined in sections 627.64194(2) and 627.64194(3).

33.     Sections 627.6515(1) and 627.662(15) together provide that the provisions of Section 627.64194 apply to group health insurance policies delivered or issued for delivery out of the state of Florida under which a resident of the state of Florida is provided coverage.

### *The First Surgery*

34.     On or about March 14, 2020, Patient presented to the emergency department at Boca Raton Regional Hospital having had a seizure that same day resulting from a possible brain tumor and/or hemorrhage, which conditions manifested themselves by acute symptoms of sufficient severity such that the absence of immediate medical attention could reasonably have been expected to result in serious jeopardy to Patient's health, serious impairment to Patient's bodily functions, and/or serious dysfunction of Patient's bodily organ(s) or part(s).

35.     Patient was evaluated in the emergency department, at which point a decision was made for Patient to undergo surgery.

36.     Upon information and belief, on or about March 14, 2020, Patient was admitted to Boca Raton Regional Hospital through the emergency department.

37.     Subsequently, Patient underwent multiple diagnostic procedures at Boca Raton Regional Hospital. Those procedures revealed a hemorrhagic mass in the right mid-temporal lobe, which conditions manifested themselves by acute symptoms of sufficient severity such that the absence of immediate medical attention could reasonably have been expected to result in serious jeopardy to Patient's health, serious impairment to Patient's bodily functions, and/or serious dysfunction of Patient's bodily organ(s) or part(s).

38.     Upon information and belief, Plaintiff's physicians were contacted as the on-call neurosurgeons at Boca Raton Regional Hospital after Patient first presented to the emergency department.

39.     On or about March 20, 2020, Plaintiff, through its physicians, provided medical services to Patient at Boca Raton Regional Hospital, which services consisted of a complex and extensive brain surgery on Patient that was necessary to relieve or eliminate the medical conditions for which Patient initially sought treatment at Boca Raton Regional Hospital and/or those that developed subsequent to Patient's admission, and included a right temporal stereotactic guided craniotomy, resection of brain tumor, evacuation of hematoma, and other related procedures (the "First Surgery").

40.     Pathology studies performed subsequent to the First Surgery revealed findings consistent with grade 4 glioblastoma, a highly aggressive and malignant type of brain tumor.

### *The Second Surgery*

41.     After the First Surgery, Patient was discharged to home with instructions to follow-up.

42.     On or about April 18, 2020, Patient presented to Delray Medical Center with a worsening headache, and diagnostic studies showed advancement of Patient's disease in terms of

new contract enhancing lesions, which conditions manifested themselves by acute symptoms of sufficient severity such that the absence of immediate medical attention could reasonably have been expected to result in serious jeopardy to Patient's health, serious impairment to Patient's bodily functions, and/or serious dysfunction of Patient's bodily organ(s) or part(s).

43.     Upon information and belief, Plaintiff's physicians were contacted as the on-call surgeons at Delray Medical Center and/or as Patient's surgeons pursuant to a continuation of Patient's treatment plan relating to the First Surgery.

44.     On or about April 22, 2020, Plaintiff, through its physicians, provided medical services to Patient at Delray Medical Center, which services consisted of a complex and extensive brain surgery on Patient that was necessary to relieve or eliminate the medical conditions for which Patient initially sought treatment at Delray Medical Center and/or those that developed subsequent to Patient's admission, and included right sided BrainPath awake stereotactic craniotomy with Gleolan fluoroscopy for brain tumor resection and other related procedures (the "Second Surgery").

<u>*Defendant's Underpayment of the Claims*</u>

45.     Plaintiff electronically submitted claims for reimbursement to Defendant for the services Plaintiff provided to Patient as part of the First and Second Surgeries (collectively, the "Claims").

46.     Plaintiff's charges for the services it provided as part of the First Surgery totaled $70,000.00.  Defendant paid $3,598.98 to Plaintiff for those services.

47.     Plaintiff's charges for the services it provided as part of the Second Surgery totaled $70,000.00. Defendant paid $3,135.11 to Plaintiff for those services.

48.     Thus, Plaintiff's charges for the services underlying the Claims totaled $140,000.00.

49.     Defendant has paid Plaintiff a total of $6,734.09 on the Claims, which is a mere 4.8% of Plaintiff's charges for the services at issue and nowhere near the amount Defendant is required to pay Plaintiff pursuant to the parties' implied-in-fact or implied-in-law contracts or under Florida law.

50.     Defendant issued the remittance notices of its foregoing underpayments on the Claims to Plaintiff in Palm Beach County, Florida, and made the foregoing underpayments to Plaintiff through interstate wire.

51.     Plaintiff did not and does not have applicable participation agreements with Defendant, and thus the Claims are considered non-participating or out-of-network claims.

52.     Plaintiff never agreed to accept discounted rates from Defendant or to be bound by Defendant's reimbursement policies or rate schedules with respect to the Claims.

53.     Yet, the remittance notices Defendant sent to Plaintiff for the services provided to Patient cryptically included remarks such as, "Contractual obligations – an attachment/other documentation is required to adjudicate this claim/service," "We have assigned the most appropriate procedure code modifier for this claim based on the other claims processed for this patient. We have based claim reimbursement on the procedure code modifier assigned," and "The Amount Paid for this Service was Determined using Medicare Rates (or other sources if no Medicare rate was available)".

54.     Medicare rates are not indicative of the fair market value of medical services as a matter of Florida law.

55. Defendant already adjudicated the Claims and determined they were for covered services.

56. Defendant has at all material times approved Plaintiff's rendering of the medical services underlying the Claims to Patient for the treatment of Patient's medical conditions, including by paying Plaintiff for the services underlying the Claims, and, upon information and belief, by authorizing and/or paying for Patient's admissions to Boca Raton Regional Hospital and Delray Medical Center on the dates listed above for the treatment of Patient's medical conditions.

57. Defendant was and is aware that Plaintiff provided medical services to Patient and billed Defendant for the medical services Plaintiff's physicians provided to Patient with the expectation and understanding that its services had been approved by Defendant and that it would be reimbursed by Defendant at rates reflecting (a) the lesser of (i) Plaintiff's billed charges or (ii) the usual and customary provider charges for similar services (i.e., fair market value), as provided by Sections 627.64194 and 641.513(5), for claims subject to those sections, and/or (b) the fair market or reasonable value, or *quantum meruit*, of the medical services Plaintiff provided, for claims not subject to Sections 627.64194 and 641.513(5).

58. Defendant already adjudicated the Claims and provided coverage for the underlying services, and in fact paid Plaintiff for the medical services Plaintiff provided to Patient, albeit at rates inappropriately below Plaintiff's billed charges, the usual and customary provider charges for similar services, and the fair market or reasonable value for Plaintiff's services.

59. The rates at which Defendant paid the Claims are significantly less than the requirements of Florida law. For claims covered by Sections 627.64194 and 641.513(5), Defendant has not paid Plaintiff the lesser of its billed charges or the fair market value of the services provided. For claims not covered by those sections, Defendant has not paid Plaintiff the fair market

or reasonable value of the services. The rates at which Defendant paid Plaintiff are less than the rates Plaintiff received during the same time period from other, similar managed care organizations for similar services provided in the same community.

60.     Defendant's refusal to pay Plaintiff the fair market value and/or the reasonable value of the medical services Plaintiff provided to Patient has caused Plaintiff to suffer damages in an amount equal to the difference between the amounts Defendant paid on the Claims and the fair market value and reasonable value of the services Plaintiff provided, plus Plaintiff's loss of use of that money.

61.     The difference between the amounts Defendant paid and Plaintiff's billed charges totals **$133,265.91**.

62.     All necessary conditions precedent for Defendant to perform its obligations pursuant to Sections 627.64194 and 641.513(5) and/or the applicable implied contracts between the parties occurred or were performed, excused, and/or waived.

### _General Allegations Specific to Statutory Emergency Services Counts_

63.     Plaintiff is obligated by law to provide emergency services and care to Defendant's members, and Defendant is obligated by law to cover those services. Under Sections 627.64194 and 641.513(5), Florida law strikes a balance concerning emergency services and care provided by non-participating providers like Plaintiff: Plaintiff must provide emergency services and care to all individuals presenting with an emergency medical condition, regardless of insurance coverage; and managed care organizations, like Defendant, must reimburse Plaintiff for providing that care to its members according to the dictates set forth by Sections 627.64194(4) and 641.513(5).

64.     Section 627.64194(2) provides that an insurer is solely liable for payment to a nonparticipating provider of covered emergency services provided to an insured.

65.     Section 627.64194(2) further provides that an insurer must provide coverage for emergency services that are required by law to be provided, regardless of whether the services are furnished by a participating or nonparticipating provider.

66.     Sections 627.64194(4) and 641.513(5) impose a duty on Defendant, as a managed care organization operating the PPO Policy, to reimburse Plaintiff for the Claims according to the statutes' dictates.

67.     Plaintiff has a private right of action under Sections 627.64194(4) and 641.513(5) to enforce the statutes' provisions against Defendant.

68.     At all material times, Plaintiff was a non-participating emergency medical provider that staffed the emergency department at both Boca Raton Regional Hospital and Delray Medical Center.

69.     The medical services Plaintiff provided to Patient as part of the First and Second Surgeries were emergency services and care as defined in Section 641.47(8), Florida Statutes.

70.     Plaintiff submitted the Claims for the services it provided to Patient as part of the First and Second Surgeries, which Claims were subject to Sections 627.64194(4) and 641.513(5).

71.     Plaintiff submitted the Claims to Defendant.

72.     Defendant, as a managed care organization licensed and/or operating in the state of Florida, was responsible for payment of the Claims.

73.     The Claims set forth Plaintiff's billed charges for the emergency services it provided to Patient as part of the First and Second Surgeries.

74.     Defendant issued remittance notices to Plaintiff for the Claims for the First and Second Surgeries reflecting allowed amounts for the emergency services that were significantly below the "usual and customary provider charges for similar services in the community where the services were provided" that Defendant was obligated to pay Plaintiff pursuant to Sections 627.64194(4) and 641.513(5).

75.     Plaintiff and Defendant did not mutually agree on a specific charge for any of the Claims. Plaintiff did not agree to accept discounted rates from Defendant for the Claims for the First and Second Surgeries, nor did it agree to be bound by Defendant's reimbursement policies or rate schedules with respect to the Claims.

76.     As a result of Defendant's failure to fulfill its legal obligations to reimburse Plaintiff in accordance with Sections 627.662(15), 627.64194(4), and 641.513(5), Plaintiff has suffered injury and is entitled to monetary damages from Defendant.

### *General Allegations Specific to Statutory Non-Emergency Services Counts*

77.     Sections 627.64194 and 641.513(5) impose a duty on Defendant, as a managed care organization, to reimburse Plaintiff for the Claims according to the statutes' dictates.

78.     Section 627.64194(3) provides that an insurer is solely liable for payment to a nonparticipating provider of covered nonemergency services provided to an insured where such services are:

(a) Provided in a facility that has a contract for the nonemergency services with the insurer which the facility would be otherwise obligated to provide under contract with the insurer; and

(b) Provided when the insurer does not have the ability and opportunity to choose a participating provider at the facility who is available to treat the insured.

79.     Plaintiff has a private right of action under Sections 627.64194(4) and 641.513(5) to enforce the statutes' provisions against Defendant.

80.     At all material times, Plaintiff was a non-participating medical provider staffing at both Boca Raton Regional Hospital and Delray Medical Center.

81.     During the First and Second Surgeries, Plaintiff covered medical services to Patient both at Boca Raton Regional Hospital and Delray Medical Center in accordance with the terms of the Policy.

82.     Upon information and belief, at all material times, both Boca Raton Regional Hospital and Delray Medical Center had contracts with Defendant for the covered medical services Plaintiff provided to Patient during the First and Second Surgeries, which services both Boca Raton Regional Hospital and Delray Medical Center would otherwise have been obligated to provide to Patient under their contracts with Defendant.

83.     Patient did not have the ability or opportunity to choose a participating provider at either Boca Raton Regional Hospital and Delray Medical Center who was available to treat Patient at the time Plaintiff provided the covered medical services to Patient because:

(a) Plaintiff's physicians were the on-call surgeons at both Boca Raton Regional Hospital and Delray Medical Center when Patient was admitted and/or when Patient underwent the First and Second Surgeries; and/or

(b) Plaintiff's physicians were the surgeons who previously operated on Patient and therefore were responsible for Patient's care pursuant to a continuation of care resulting from their initial treatment of Patient.

84.     Plaintiff submitted the Claims for the services it provided to Patient as part of the First and Second Surgeries, which Claims were subject to Sections 627.64194(4), and 641.513(5).

85.     Plaintiff submitted the Claims to Defendant.

86.     The Claims set forth Plaintiff's billed charges for the services it provided to Patient as part of the First and Second Surgeries.

87.     Defendant, as a managed care organization licensed and/or operating in the state of Florida, was responsible for payment of the Claims.

88.     Defendant issued payments to Plaintiff for the Claims, but at a rate significantly below the "usual and customary provider charges for similar services in the community where the services were provided" that Defendant was obligated to pay Plaintiff pursuant to Sections 627.64194(4) and 641.513(5).

89.     Plaintiff and Defendant did not mutually agree on a specific charge for any of the Claims. Plaintiff did not agree to accept discounted rates from Defendant for the Claims, nor did it agree to be bound by Defendant's reimbursement policies or rate schedules with respect to the Claims.

90.     As a result of Defendant's failure to fulfill its legal obligations to reimburse Plaintiff in accordance with Sections 627.662(15), 627.64194(4), and 641.513(5), Plaintiff has suffered injury and is entitled to monetary damages from Defendant.

<div align="center">

**COUNT I**
**Violation of Sections 627.64194 and 641.513(5) – Emergency Services**
**First Surgery**
*Alternative to Counts III, V, and VI*

</div>

91.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 10 and 12 through 76 above.

92.     Defendant violated Section 641.513(5), as incorporated by reference in Sections 627.64194 and 627.662, by failing to pay Plaintiff the "usual and customary provider charges for similar services in the community where the services were provided" for the Claims for the First Surgery.

93.     Plaintiff seeks compensatory damages, as permitted by applicable law, in an amount equal to the difference between the amount Defendant paid to Plaintiff for the Claims for the First Surgery and the fair market value of the medical services underlying those Claims, plus interest.

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendant and in favor of Plaintiff in an amount representing the difference between the amount Defendant paid to the Plaintiff for the Claims underlying the First Surgery and the fair market value of the medical services underlying those Claims, as determined by the finder of fact, together with an award of prejudgment interest, costs, and such other and further relief as the Court may deem just and proper.

## COUNT II
### Violation of Sections 627.64194 and 641.513(5) – Emergency Services
### Second Surgery
*Alternative to Counts IV, V, and VI*

94.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 10 and 12 through 76 above.

95.     Defendant violated Section 641.513(5), as incorporated by reference in Sections 627.64194 and 627.662, by failing to pay Plaintiff the "usual and customary provider charges for similar services in the community where the services were provided" for the Claims for the Second Surgery.

96.     Plaintiff seeks compensatory damages, as permitted by applicable law, in an amount equal to the difference between the amount Defendant paid to Plaintiff for the Claim for the Second Surgery and the fair market value of the medical services underlying those Claims, plus interest.

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendant and in favor of Plaintiff in an amount representing the difference between the amount Defendant paid to the Plaintiff for the Claims underlying the Second Surgery and the fair market value of the medical services underlying those Claims, as determined by the finder of fact, together with an award of prejudgment interest, costs, and such other and further relief as the Court may deem just and proper.

<div align="center">

**COUNT III**
**<u>Violation of Sections 627.64194 and 641.513(5) – Non-emergency Services</u>**
**<u>First Surgery</u>**
*Alternative to Counts I, V, and VI*

</div>

97.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 10, 12 through 62, and 77 through 90 above.

98.     Defendant violated Section 641.513(5), as incorporated by reference in Sections 627.64194 and 627.662, by failing to pay Plaintiff the "usual and customary provider charges for similar services in the community where the services were provided" for the Claims for the First Surgery.

99.     Plaintiff seeks compensatory damages, as permitted by applicable law, in an amount equal to the difference between the amount Defendant paid to Plaintiff for the Claims for the First Surgery and the fair market value of the medical services underlying those Claims, plus interest.

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendant and in favor of Plaintiff in an amount representing the difference between the amount Defendant paid to the Plaintiff for the Claims underlying the First Surgery and the fair market value of the medical services underlying those Claims, as determined by the finder of fact, together with an award of

prejudgment interest, costs, and such other and further relief as the Court may deem just and proper.

<div align="center">

**COUNT IV**
**<u>Violation of Sections 627.64194 and 641.513(5) – Non-emergency Services</u>**
**<u>Second Surgery</u>**
*Alternative to Counts II, V, and VI*

</div>

100.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 10, 12 through 62, and 77 through 90 above.

101.    Defendant violated Section 641.513(5), as incorporated by reference in Sections 627.64194 and 627.662, by failing to pay Plaintiff the "usual and customary provider charges for similar services in the community where the services were provided" for the Claims for the Second Surgery.

102.    Plaintiff seeks compensatory damages, as permitted by applicable law, in an amount equal to the difference between the amount Defendant paid to Plaintiff for the Claim for the Second Surgery and the fair market value of the medical services underlying those Claims, plus interest.

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendant and in favor of Plaintiff in an amount representing the difference between the amount Defendant paid to the Plaintiff for the Claims underlying the Second Surgery and the fair market value of the medical services underlying those Claims, as determined by the finder of fact, together with an award of prejudgment interest, costs, and such other and further relief as the Court may deem just and proper.

<div align="center">

Shapiro, Blasi, Wasserman & Hermann, P.A.
Attorneys for Plaintiff
19

</div>

**COUNT V**
**Breach of Implied-in-Fact Contract**
**Both Surgeries**
*Alternative to Remaining Counts*

103.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 22, 24 through 28, and 30 through 62 above.

104.    At all material times, Defendant was obligated to cover and pay for medical services Patient received at both Boca Raton Regional Hospital and Delray Medical Center.

105.    Defendant knew or should have known that Plaintiff was a non-participating medical provider that provided staffing at both Boca Raton Regional Hospital and Delray Medical Center.

106.    Defendant knew or should have known is obligated by law to cover services like those Plaintiff provided to Patient during the First and Second Surgeries.

107.    Defendant was aware of its obligations to non-contracted providers like Plaintiff and was aware that Plaintiff provided medical services to Patient with the reasonable expectation and understanding that Plaintiff would be reimbursed by Defendant at rates, under *quantum meruit*, reflecting the fair market or reasonable value of its services.

108.    Defendant knew that Plaintiff had not agreed to accept discounted rates from Defendant for the Claims and had not agreed to be bound by Defendant's reimbursement policies or rate schedules.

109.    With full knowledge of its obligations as described in detail above, Defendant approved of Patient's admission to both Boca Raton Regional Hospital and Delray Medical Center on or about March 14, 2020 and April 22, 2020, for the treatment of Patient's medical condition, approved of the provision of medical services to Patient by providers like Plaintiff during that

admission, and impliedly agreed to pay Plaintiff the reasonable value in the marketplace for the medical services Plaintiff rendered to Patient.

110.    Upon information and belief, Defendant further approved of Plaintiff's provision of medical services to Patient as part of the First Surgery by issuing prior authorization for those services under prior authorization number A094038717, and as part of the Second Surgery by issuing prior authorization for those services under prior authorization number A095612094.

111.    Additionally, upon information and belief, prior to Plaintiff's provision of the services at issue to Plaintiff, the course of dealing between Plaintiff and Defendant was such that Defendant often paid Plaintiff at rates equal to the reasonable value of urgent or emergency services Plaintiff provided to Defendant's members at Boca Raton Regional Hospital and Delray Medical Center, thereby establishing a common basis of understanding between the parties that Defendant would pay Plaintiff at rates representing the reasonable value for such services

112.    Plaintiff submitted claims for the First and Second Surgeries seeking reimbursement at rates representing the reasonable value of the services rendered.

113.    Defendant acknowledged its obligation and responsibility for payment and its approval of Plaintiff's performing medical services as part of the First and Second Surgeries by paying Plaintiff's Claims for those services, albeit at rates far below that to which Plaintiff is entitled.

114.    Defendants further acknowledged its obligations and responsibility for payments and its approval of Plaintiff's performing medical services as part of the First and Second Surgeries by preauthorizing those services.

115.    Plaintiff conferred a direct benefit on Defendant by providing valuable medical services to Patient as Boca Raton Regional Hospital and Delray Medical Center as part of the First and Second Surgeries, with the knowledge and/or approval of Defendant.

116.    The prior course of dealing between Plaintiff and Defendant, as described above, Defendant's issuance of prior authorization for the services Plaintiff provided to Patient, and Defendant's partial payment for the services at issue was all intentional and demonstrates an understanding between the parties that Defendant would pay Plaintiff for the services Plaintiff provided to Patient.

117.    Defendant breached its implied-in-fact contract with Plaintiff by failing to pay the reasonable value of the medical services Plaintiff provided to Patient.

118.    As a result of Defendant's breach of its implied-in-fact contract to reimburse Plaintiff the fair market or reasonable value for the medical services it rendered to Patient as part of the First and Second Surgeries, Plaintiff has suffered injury and is entitled to monetary damages from Defendant.

119.    Plaintiff seeks compensatory damages, as permitted by applicable law, in an amount equal to the difference between the amounts Defendant paid to Plaintiff for the Claims and the reasonable value of the medical services underlying the Claims, plus interest.

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendant and in favor of Plaintiff in an amount representing the difference between the amounts Defendant paid to Plaintiff for the claims at issue and the reasonable value of the medical services underlying those claims, as determined by the finder of fact, together with an award of prejudgment interest, costs, and such other and further relief as the Court may deem just and proper.

## COUNT VI
## Unjust Enrichment/Breach of Implied-in-Law Contract
## Both Surgeries
*Alternative to Remaining Counts*

120.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 62 above.

121.     Plaintiff conferred a direct benefit on Defendant by providing valuable medical services to Patient as part of the First and Second Surgeries at Boca Raton Regional Hospital and Delray Medical Center, with the knowledge and/or approval of Defendant.

122.     Defendant collects premiums and other forms of compensation from its members and subscribers in return for agreeing to properly reimburse providers, like Plaintiff, that render medical services to members, like Patient.

123.     In exchange for premiums, Defendant owes its members, including Patient, an obligation to pay for the covered medical services the members receive.

124.     Under Florida and federal law, Defendant is obligated to provide coverage for services like those rendered during the First and Second Surgeries and provided by out-of-network providers like Plaintiff.

125.     Defendant derives a direct benefit from Plaintiff's provision of medical services to its members because it is through Plaintiff's provision of those services that Defendant fulfills its legal obligations to its members.

126.     The medical services Plaintiff provided to Patient as part of the First and Second Surgeries were undisputedly covered because Defendant adjudicated and paid for those services, albeit at an amount less than the fair market or reasonable value of the services.

127.     The medical services Plaintiff provided to Patient s part of the First and Second Surgeries were undisputedly covered because Defendant preauthorized those services.

128. When Plaintiff provided covered medical services to Patient, Defendant received the benefit of having its legal obligations to Patient discharged. Plaintiff's provision of covered medical services to Patient further benefitted Defendant because it offered a more permanent and/or more beneficial solution to the medical conditions for which Patient initially sought treatment on the dates set forth above, potentially negating Patient's need to seek additional medical treatment in the future for which Defendant would be financially liable.

129. Defendant was aware of and implicitly approved Plaintiff's provision of covered medical services to Patient because Defendant authorized and/or paid for Patient's admission to both Boca Raton Regional Hospital and Delray Medical Center on or about March 20, 2020 and April 22, 2020 and services relating to that admission.

130. Upon information and belief, Defendant also was aware of and approved of Plaintiff's provision of medical services to Patient as part of the First Surgery by issuing prior authorization for those services under prior authorization number A094038717, and as part of the Second Surgery by issuing prior authorization for those services under prior authorization number A095612094.

131. Defendant's liability as the party responsible for payment to Plaintiff for the services it provided to Patient as part of the First and Second Surgeries is established by Defendant's preauthorization of the services, its determination that the services were covered, and/or its payment for the services, albeit at rates far below that to which Plaintiff is entitled.

132. Defendant voluntarily accepted, retained, and enjoyed, and continues to accept, retain, and enjoy, the benefits conferred upon it by Plaintiff, knowing that Plaintiff expected to be paid the fair market or reasonable value of its services.

133.     Defendant has failed to pay the reasonable value of the benefit conferred upon it by Plaintiff, in this case, the reasonable value of the services provided to Patient as part of the First and Second Surgeries. As a result, Defendant has withheld for itself monies that should have been paid to Plaintiff for Plaintiff's services and has received an unjustified windfall.

134.     By refusing to pay Plaintiff appropriately, Defendant has been unjustly enriched. Under the circumstances set forth above, it is unjust and inequitable for Defendant to retain the benefit it received without paying the value of that benefit, *i.e.,* by paying Plaintiff the fair market or reasonable value of the medical services Plaintiff provided to Patient.

135.     Plaintiff seeks compensatory damages, as permitted by applicable law, in an amount equal to the difference between the amounts Defendant paid to Plaintiff for the Claims and the reasonable value of the medical services underlying the Claims, plus interest.

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendant and in favor of Plaintiff in an amount representing the difference between the amounts Defendant paid to Plaintiff for the claims at issue and the reasonable value in the marketplace of the medical services underlying those claims, as determined by the finder of fact, together with an award of prejudgment interest, costs, and such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

DATED this 15<u>th</u> day of June, 2022.

Respectfully submitted,

**SHAPIRO, BLASI, WASSERMAN & HERMANN, P.A.**
*Attorneys for Plaintiff*
7777 Glades Road, Suite 400
Boca Raton, Florida 33434
Telephone:      (561) 477-7800
Facsimile:      (561) 477-7722

By:   *s/ Genevieve Lee Turner*
　　　RICHARD P. HERMANN, II, ESQ
　　　Florida Bar No. 110019
　　　Primary E-Mail: rhermann@sbwh.law
　　　Secondary E-Mail: floridaservice@sbwh.law
　　　GENEVIEVE LEE TURNER, ESQ.
　　　Florida Bar No. 100058
　　　Primary E-Mail:  gturner@sbwh.law
　　　Secondary E-Mail:  ksandoval@sbwh.law
　　　CHARLES BLAKE DYE, ESQ.
　　　Florida Bar No. 500461
　　　Primary E-Mail:  bdye@sbwh.law

IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT, IN AND FOR
PALM BEACH COUNTY, FLORIDA

CASE NO.: 50-2022-CA-005712-XXXX-MB

DIVISION: AK

NEUROSURGICAL CONSULTANTS OF
SOUTH FLORIDA, L.L.C.,

       Plaintiff,

vs.

UNITEDHEALTHCARE INSURANCE
COMPANY, a foreign corporation,

       Defendant.

_____/

### PLAINTIFF'S NOTICE OF SERVING FIRST SET OF INTERROGATORIES TO DEFENDANT UNITEDHEALTHCARE INSURANCE COMPANY

Pursuant to Florida Rule of Civil Procedure 1.340, Plaintiff Vanguard Plastic Surgery, PLLC d/b/a Vanguard Aesthetic and Plastic Surgery ("Plaintiff") serves the First Set of Interrogatories ("Interrogatories") to Defendant UnitedHealthcare Insurance Company ("Defendant"), to be answered in writing and under oath within forty-five (45) days and in accordance with applicable Florida Rules of Civil Procedure.

*[Remainder of page intentionally left blank]*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy hereof has been filed electronically

with the Court at www.myflcourtaccess.com this 10th day of August 2022.

<div align="right">

**SHAPIRO, BLASI, WASSERMAN &
HERMANN, P.A.**
*Attorneys for Plaintiff*
7777 Glades Road, Suite 400
Boca Raton, Florida 33434
Telephone:   (561) 477-7800
Facsimile:        (561) 477-7722

By:   *s/ Genevieve Lee Turner*
       RICHARD P. HERMANN, II, ESQ
       Florida Bar No. 110019
       Primary E-Mail: rhermann@sbwh.law
       Secondary E-Mail: floridaservice@sbwh.law
       GENEVIEVE LEE TURNER, ESQ.
       Florida Bar No. 100058
       Primary E-Mail: gturner@sbwh.law
       Secondary E-Mail: ksandoval@sbwh.law
       CHARLES BLAKE DYE, ESQ.
       Florida Bar No. 500461
       Primary E-Mail: bdye@sbwh.law

</div>

IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT, IN AND FOR PALM
BEACH COUNTY, FLORIDA

CASE NO.: 50-2022-CA-005712-XXXX-MB

DIVISION: AK

NEUROSURGICAL CONSULTANTS OF
SOUTH FLORIDA, L.L.C.,

      Plaintiff,

vs.

UNITEDHEALTHCARE INSURANCE
COMPANY, a foreign corporation,

      Defendant.

_____/

### PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT UNITEDHEALTHCARE INSURANCE COMPANY

Pursuant to Florida Rule of Civil Procedure 1.340, Plaintiff Neurosurgical Consultants of

South Florida, L.L.C., ("Plaintiff") serves the First Set of Interrogatories ("Interrogatories") to

Defendant UnitedHealthcare Insurance Company ("Defendant"), to be answered in writing and

under oath within forty-five (45) days and in accordance with applicable Florida Rules of Civil

Procedure.

### DEFINITIONS AND INSTRUCTIONS

1.  *Person.* The term "person" is defined as any natural person or business, legal or governmental entity or association.

2.  *Plaintiff.* The term "Plaintiff" shall refer to Plaintiff Neurosurgical Consultants of South Florida, L.L.C., and any of its former or present officers, directors, partners, employees, agents, members, any corporations or entities now or formerly affiliated with it, and all other persons or entities acting on its behalf.

3.    *You/Your/Defendant.* The terms "you," "your," and/or "Defendant" shall mean Defendant UnitedHealthcare Insurance Company, a foreign corporation, and any of its former or present officers, directors, partners, employees, agents, members, any corporations or entities now or formerly affiliated with it, and all other persons or entities acting on its behalf.

4.    *Complaint.* The term "Complaint" means and refers to the Complaint and Demand for Jury Trial filed by Plaintiff in this Lawsuit on or about June 15, 2022.

5.    *Lawsuit.* The term "Lawsuit" means and refers to Case No. 5-2022-CA-005712-XXXX-MB, *Neurosurgical Consultants of South Florida, L.L.C. v. UnitedHealthcare Insurance Company*, pending in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida.

6.    *Concerning.* The term "concerning" means, in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, or constituting.

7.    *Document/Documents.* The terms "document" or "documents" shall have the meaning set forth in Florida Rule of Civil Procedure 1.350 and shall include the original and each non-identical copy of any written, graphic, electronic, or magnetic matter, however produced, in your possession, custody, or control, and shall specifically include ESI and metadata. The terms shall include all writings, letters, correspondence, e-mail, telegrams, telexes, memoranda, records, books of account, ledgers, diaries, calendars, journals, minutes, contracts, insurance policies, drawings, graphs, charts, photographs, notes, interoffice communications, microfilm, bulletins, circulars, schedules, guides, manuals, pamphlets, studies, surveys, notices, summaries, reports, analyses, worksheets, catalogs, invoices, checks, vouchers, articles, and writings of every kind or character that are in your possession, custody or control or subject thereto.

8.    *Electronically Stored Information/ESI.* The terms "Electronically Stored Information" and "ESI" shall have the meaning as used in Rule 1.350 and shall include computer-generated file(s) or data that are maintained in electronic form, including, but not limited to, email (e.g., .msg), spreadsheet files (e.g., .xls), slide presentation files (e.g., .ppt), word processing files (e.g., .doc), audio or visual files (e.g., .wav, .mpeg), image files (e.g., .pdf), and container files (e.g., .pst, .zip).

9.    *Identify* (With Respect to Persons). When referring to a person, to "identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

10.   *Identify* (With Respect to Documents and Electronically Stored Information). When referring to documents and electronically stored information, to "identify" means to give, to the extent known, (i) the name or type of document/electronically stored information,

(ii) its general subject matter, (iii) its date, (iv) its author(s), and (v) the addressee(s) and recipient(s), if applicable.

11.  *Identify* (With Respect to Communications). When used in reference to a communication, "identify" shall mean to state (i) the form of the communication, *e.g.*, telephone conversation, letter, e-mail, telegram, teletype, telecopy, written memorandum, face-to-face conversation, or any other form, (ii) the date of the communication or the dates in which the communication was sent and/or received if not the same, (iii) the names of the parties to the communication, and (iv) a description of the substance of the communication.

12.  *Medical Services*. The term "Medical Services" means and refers to any medical treatment or health care, including but not limited to, hospital services and facility charges, surgery, office visits, testing, medications, injections, implants, medical devices, nursing services, examinations, supplies and other medical services, whether in-patient or out-patient, that are otherwise the subject of the Medical Claims defined herein.

13.  *Medical Claim*. The term "Medical Claim" means and refers to any claim for payment of Medical Services that Plaintiff submitted to Defendant for processing and payment, whether paper or electronic, and that forms the basis, in whole or in part, of Plaintiff's legal claims against Defendants in this Lawsuit.

14.  *CPT Code*. The term "CPT Code" means and refers to any medical billing code within the List of Current Procedural Terminology Codes maintained by the Centers for Medicare & Medicaid Services.

15.  *HCPCS Code*. The term "HCPCS Code" means and refers to any medical billing code with the List of Healthcare Common Procedure Coding System Codes maintained by the Centers for Medicare & Medicaid Services.

16.  *Date*. "Date" means the exact date, month, and year, if ascertainable, or, if not, the best available approximation.

17.  *And/Or*. "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to call for information that might otherwise be construed to be outside the scope of these Interrogatories. Similarly, references to the singular include the plural, and references to the plural include the singular. Also, the past verb tense includes the present, and the present verb tense includes the past.

18.  *Out-of-Network Provider*. The term "Out-of-Network Provider" means a physician or other medical provider who does not participate in Defendant's provider network(s). This means that the provider has not signed a contract agreeing to accept Defendant's negotiated prices.

## INTERROGATORIES

1. What is the name and address of the person answering these interrogatories, and, if applicable, the person's official position or relationship with the party to whom the interrogatories are directed?

2. List the names, addresses, and telephone numbers of all persons who are believed or known by You, Your agents, or Your attorneys to have any knowledge concerning any of the issues in this Lawsuit; and specify the subject matter about which the witness has knowledge.

3. Identify each and every non-privileged document reflecting Your internal communications (including all letters, notes from verbal conversations, e-mails, and other electronic documents) concerning the Medical Claims at issue in this Lawsuit and/or any allegations set forth in Plaintiff's Complaint.

4. Identify the contractually agreed-to rates of payment for medical services similar to (i.e., with the same CPT codes as) the Medical Services at issue in Plaintiff's Complaint, limited to the same geographic area as the Medical Services at issue, under all contracts between You and any medical provider in effect at any time from January 1, 2019 through the present.

5. Identify the amounts billed to You and the amounts You remitted as payment to any medical provider who provided medical services similar to (i.e., with the same CPT codes as) the Medical Services in the same geographic area as those at issue in Plaintiff's Complaint from January 1, 2019 through the present.

6. Describe in detail the process You used to calculate the reimbursement rates for the Medical Services at issue in Plaintiff's Complaint.

7. Describe in detail the process You used to calculate the reimbursement rates for medical services similar to (i.e., with the same CPT codes as) the Medical Services at issue, provided by Out-of-Network Providers in Palm Beach County, Florida, from January 1, 2019 through the present.

8. Describe in detail the process You used to calculate the "usual and customary charges," as defined in *Baker County Medical Services, Inc. v. Aetna Health Management, LLC*, 31 So. 2d 842, 845–46 (Fla. 1st DCA 2010), for medical services similar to (i.e., with the same CPT codes as) the Medical Services at issue, in Palm Beach County, Florida, from January 1, 2019 through the present.

9. Identify all individuals and/or entities with any role or involvement in determining the reimbursement rates paid to Plaintiff for the Medical Services at issue and describe each individual's and/or entity's role in making those reimbursement rate determinations.

10. Identify all documents, databases, schedules, analyses, reports, contracts, summaries, and any other resource that You used or upon which You relied in determining:

   a. the reimbursement rates paid to Plaintiff for the Medical Services at issue; and

b. the "usual and customary charges," as defined in *Baker County Medical Services, Inc. v. Aetna Health Management, LLC*, 31 So. 2d 842, 845–46 (Fla. 1st DCA 2010), for medical services similar to (i.e., with the same CPT codes as) the Medical Services at issue in Palm Beach County, Florida, from January 1, 2019 through the present.

11. For each request for admission served by Plaintiff in this case that You denied or did not completely admit without reservation or qualification, please state in complete detail the factual basis for Your denial or failure to admit without reservation or qualification.

## <u>VERIFICATION</u>

THE STATE OF FLORIDA_____   §
§
COUNTY OF BROWARD   §

      The foregoing instrument was acknowledged before me by means of ☐ physical presence

or ☐ online notarization, this \_\_\_\_ day of _____, 2022, by _____

[name] as _____[title] for _____ [name of party

on behalf of whom instrument was executed].

      Personally Known ☐ OR Produced Identification ☐

      Type of Identification Produced_____


_____
Notary Public in and for the
STATE OF _____


_____
[Print, type, or Stamp Commissioned Name of Notary Public]

Dated: August 10, 2022

**SHAPIRO,   BLASI,   WASSERMAN   &
HERMANN, P.A.**
*Attorneys for Plaintiff*
7777 Glades Road, Suite 400
Boca Raton, Florida 33434
Telephone:   (561) 477-7800
Facsimile:         (561) 477-7722

By:   *Genevieve Lee Turner*
      RICHARD P. HERMANN, II, ESQ
      Florida Bar No. 110019
      Primary E-Mail: rhermann@sbwh.law
      Secondary E-Mail: floridaservice@sbwh.law
      GENEVIEVE LEE TURNER, ESQ.
      Florida Bar No. 100058
      Primary E-Mail:  gturner@sbwh.law
      Secondary E-Mail:  ksandoval@sbwh.law
      CHARLES BLAKE DYE, ESQ.
      Florida Bar No. 500461
      Primary E-Mail: bdye@sbwh.law

IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT, IN AND FOR PALM
BEACH COUNTY, FLORIDA

CASE NO.: 50-2022-CA-005712-XXXX-MB

DIVISION: AK

NEUROSURGICAL CONSULTANTS OF
SOUTH FLORIDA, L.L.C.,

      Plaintiff,

vs.

UNITEDHEALTHCARE INSURANCE
COMPANY, a foreign corporation,

      Defendant.

_____/

## <u>PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT UNITEDHEALTHCARE INSURANCE COMPANY</u>

Pursuant to Florida Rule of Civil Procedure 1.350, Plaintiff Neurosurgical Consultants of South Florida, L.L.C.("Plaintiff'), serves its First Request for Production of Documents to Defendant UnitedHealthcare Insurance Company ("Defendant"), who is directed to serve its written responses to the following requests for production of documents and electronically stored information ("Requests"), and to produce true and correct copies of responsive documents and electronically stored information for inspection and copying, within forty-five (45) days of service, to the undersigned counsel of record for Plaintiff, in accordance with Rule 1.350.

## <u>DEFINITIONS AND INSTRUCTIONS</u>

1.    *Person*. The term "person" is defined as any natural person or business, legal or governmental entity or association.

2.    *Plaintiff.* The term "Plaintiff" shall refer to Plaintiff Neurosurgical Consultants of South Florida, L.L.C., and any of its former or present officers, directors, partners, employees, agents, members, any corporations or entities now or formerly affiliated with it, and all other persons or entities acting on its behalf.

3.    *You/Your/Defendant.* The terms "you," "your," and/or "Defendant" shall mean Defendant UnitedHealthcare Insurance Company, and any of its former or present officers, directors, partners, employees, agents, members, any corporations or entities now or formerly affiliated with it, and all other persons or entities acting on its behalf.

4.    *Complaint.* The term "Complaint" means and refers to the Complaint and Demand for Jury Trial filed by Plaintiff in this Lawsuit on or about June 15, 2022.

5.    *Lawsuit.* The term "Lawsuit" means and refers to Case No. 50-2022-CA-005712-XXXX-MB, *Neurosurgical Consultants of South Florida, L.L.C. v. UnitedHealthcare Insurance Company*, pending in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida.

6.    *Concerning.* The term "concerning" means, in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, or constituting.

7.    *Document/Documents.* The terms "document" or "documents" shall have the meaning set forth in Florida Rule of Civil Procedure 1.350 and shall include the original and each non-identical copy of any written, graphic, electronic, or magnetic matter, however produced, in your possession, custody, or control, and shall specifically include ESI and metadata. The terms shall include all writings, letters, correspondence, e-mail, telegrams, telexes, memoranda, records, books of account, ledgers, diaries, calendars, journals, minutes, contracts, insurance policies, drawings, graphs, charts, photographs, notes, interoffice communications, microfilm, bulletins, circulars, schedules, guides, manuals, pamphlets, studies, surveys, notices, summaries, reports, analyses, worksheets, catalogs, invoices, checks, vouchers, articles, and writings of every kind or character that are in your possession, custody or control or subject thereto.

8.    *Electronically Stored Information/ESI.* The terms "Electronically Stored Information" and "ESI" shall have the meaning as used in Rule 1.350 and shall include computer-generated file(s) or data that are maintained in electronic form, including, but not limited to, email (e.g., .msg), spreadsheet files (e.g., .xls), slide presentation files (e.g., .ppt), word processing files (e.g., .doc), audio or visual files (e.g., .wav, .mpeg), image files (e.g., .pdf), and container files (e.g., .pst, .zip).

9.    *Identify* (With Respect to Persons). When referring to a person, to "identify" means to give, to the extent known, the person's full name, present or last known address, and when

referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

10.   *Identify* (With Respect to Documents and Electronically Stored Information). When referring to documents and electronically stored information, to "identify" means to give, to the extent known, (i) the name or type of document/electronically stored information, (ii) its general subject matter, (iii) its date, (iv) its author(s), and (v) the addressee(s) and recipient(s), if applicable.

11.   *Identify* (With Respect to Communications). When used in reference to a communication, "identify" shall mean to state (i) the form of the communication, *e.g.*, telephone conversation, letter, e-mail, telegram, teletype, telecopy, written memorandum, face-to-face conversation, or any other form, (ii) the date of the communication or the dates in which the communication was sent and/or received if not the same, (iii) the names of the parties to the communication, and (iv) a description of the substance of the communication.

12.   *Medical Services*.  The term "Medical Services" means and refers to any medical treatment or health care, including but not limited to, hospital services and facility charges, surgery, office visits, testing, medications, injections, implants, medical devices, nursing services, examinations, supplies and other medical services, whether in-patient or out-patient, that are otherwise the subject of the Medical Claims defined herein.

13.   *Medical Claim*.  The term "Medical Claim" means and refers to any claim for payment of Medical Services that Plaintiff submitted to Defendant for processing and payment, whether paper or electronic, and that forms the basis, in whole or in part, of Plaintiff's legal claims against Defendants in this Lawsuit.

14.   *CPT Code*. The term "CPT Code" means and refers to any medical billing code within the List of Current Procedural Terminology Codes maintained by the Centers for Medicare & Medicaid Services.

15.   *HCPCS Code*. The term "HCPCS Code" means and refers to any medical billing code with the List of Healthcare Common Procedure Coding System Codes maintained by the Centers for Medicare & Medicaid Services.

16.   *Date*.  "Date" means the exact date, month, and year, if ascertainable, or, if not, the best available approximation.

17.   *And/Or*.  "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to call for information that might otherwise be construed to be outside the scope of these Requests. Similarly, references to the singular include the plural, and references

to the plural include the singular. Also, the past verb tense includes the present, and the present verb tense includes the past.

18.   *Out-of-Network Provider.* The term "Out-of-Network Provider" means a physician or other medical provider who does not participate in Defendant's provider networks. This means that the provider has not signed a contract agreeing to accept Defendant's negotiated prices.

## DOCUMENTS REQUESTED

1.   In providing your responses, you are requested to furnish all information available to you, including information in possession of your attorney(s), agent(s), and person(s) acting on your behalf, in connection with the circumstances made the basis of this suit, and not merely information known to you by your own personal knowledge.

2.   If, in answering any of these Requests, you encounter any ambiguity in construing either the Request or a definition or instruction relevant to the inquiry contained in the Request, set forth the matter deemed ambiguous and the construction selected or used in responding to the Request.

3.   These Requests are intended to obtain any and all information concerning the areas inquired about that may be in the possession, custody or control of Defendants or any representative of Defendants, by whatever source possible.

4.   These Requests are submitted for the purpose of discovery and are not to be taken as waiving any objections which may be made at trial to the introduction of evidence on subjects covered by these Requests or as an admission of the relevance or materiality at trial of any of the matters covered by these Requests.

5.   If you object to any Request because of an alleged privilege, you must nevertheless provide the following information pursuant to Florida Rule of Civil Procedure 1.280(b)(6), unless divulging the information would disclose the privileged information:

   a.   The nature of the privilege claimed (including work product);

   b.   If the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked;

   c.   The date of the Document, Electronically Stored Information, or oral Communication;

   d.   The general subject matter of the Document, Electronically Stored Information, or oral Communication;

   e.   If a Document: its type (e.g., letter or memorandum) and, if electronically stored information, the software application used to create it (e.g., MS Word or MS Excel

Spreadsheet), and the custodian, location, and such other information sufficient to identify the material for a subpoena duces tecum or a production request, including where appropriate the author, the addressee, and, if not apparent, the relationship between the author and addressee;

f.   If an oral Communication: the place where it was made, the names of the persons present while it was made, and, if not apparent, the relationship of the persons present to the declarant.

## REQUESTS FOR PRODUCTION OF DOCUMENTS
## AND ELECTRONICALLY STORED INFORMATION

1.  Produce all Documents and ESI reflecting any claims for payments submitted to You for the Medical Services identified in Plaintiff's Complaint. Your response to this request shall include, but is not limited to, producing copies of all HCFA-1500 or CMS-1500 claim forms Plaintiff submitted to You for the Medical Services identified in Plaintiff's Complaint.

2.  Produce all Documents and ESI that You sent to Plaintiff concerning the adjudication, review, payment, or denial of each Medical Claim. Your response to this request shall include, but is not limited to, producing all explanations of benefits or explanation of provider payments concerning the Medical Claims at issue in this Lawsuit.

3.  Produce all Documents and ESI reflecting the total amounts You issued to Plaintiff as payment on the Medical Claims at issue in this Lawsuit.

4.  Produce all non-privileged Documents and ESI reflecting Your internal communications (including all letters, notes from verbal conversations, e-mails, and other electronic documents) concerning the Medical Claims at issue in this Lawsuit.

5.  Produce all non-privileged Documents and ESI reflecting Your internal communications (including all letters, notes from verbal conversations, e-mails, and other electronic documents) concerning the amounts or rates that You paid for each Medical Service that forms the basis of the Medical Claims at issue in this Lawsuit.

6.  Produce all correspondence between You and Plaintiff concerning the Medical Services identified in Plaintiff's Complaint and/or the Medical Claims at issue in this Lawsuit.

7.  Produce all correspondence between You and the patient to whom the Medical Services were provided concerning the Medical Services identified in Plaintiff's Complaint and/or the Medical Claims at issue in this Lawsuit.

8.  Produce Documents and ESI reflecting the amounts billed to You and the amounts You remitted as payment for any medical providers who provided medical services similar to (i.e., with the same CPT codes as) the Medical Services in the same geographic area as those at issue in Plaintiff's Complaint from January 1, 2019 through present.

9.  Produce any and all agreements, contracts, and/or memoranda of understanding in effect at any time from January 1, 2019 through the present between You and any medical providers reflecting reimbursement rates for medical services similar to (i.e., with the same CPT codes as) the Medical Services at issue in Plaintiff's Complaint, limited to the same geographic area as the Medical Services at issue.

10.     Produce all Documents and ESI reflecting any agreement in effect at any time from January 1, 2019 through the present between You and any other entity concerning the amount to be paid to out-of-network medical providers for medical services similar to (i.e., with the same CPT codes as) the Medical Services at issue in Plaintiff's Complaint, limited to the same geographic area as the Medical Services at issue.

11.     Produce all Documents and ESI that You used or upon which You relied in determining the reimbursement rates paid to Plaintiff for each CPT code and/or for the Medical Services at issue in this Lawsuit.

12.     Produce all other Documents and ESI, in addition to those produced in response to Requests 8 through 11 above, which You contend reflect the "usual and customary" charges, as defined in *Baker County Medical Services, Inc. v. Aetna Health Management, LLC*, 31 So. 3d 842, 845-46 (Fla. 1st DCA 2010), for the Medical Services at issue in Plaintiff's Complaint.

13.     Produce all Documents and ESI reflecting Your internal policies and procedures for administering claims for medical services provided to Your members by Out-of-Network Providers in Florida.

14.     Produce a complete copy of the health insurance polic(y)(ies) or health benefit plan(s) that provided coverage in March 2020 to the patient to whom the Medical Services were provided.

15.     Produce a copy of the member ID card(s) in effect during March 2020 for the patient to whom the Medical Services were provided.

16.     Produce all Documents and ESI that You identify in Your response to Interrogatory No. 10 of Plaintiff's First Set of Interrogatories to Defendant.

17.     Produce all Documents and ESI reflecting any agreement in effect at any time from January 1, 2019 through the present between You and any other entity concerning the amount to be paid to out-of-network medical providers for medical services similar to (i.e., with the same CPT Codes as) the Medical Services in the same geographic area as those at issue in Plaintiff's Complaint.

18.     Produce all Documents and ESI reflecting Your internal policies, guidelines, training manuals, compliance materials, or similar materials that define "emergency services and care" and that were in effect in the state of Florida at any time from January 1, 2019 through the present.

19.     Produce all medical records provided to You by any individual or entity concerning the Medical Services at issue.

20.   Produce all Documents and ESI reflecting Your preauthorization or precertification of any of the Medical Services at issue in Plaintiff's Complaint.


Dated: August 10, 2022

**SHAPIRO, BLASI, WASSERMAN & HERMANN, P.A.**
*Attorneys for Plaintiff*
7777 Glades Road, Suite 400
Boca Raton, Florida 33434
Telephone:   (561) 477-7800
Facsimile:         (561) 477-7722

By:   *Genevieve Lee Turner*
RICHARD P. HERMANN, II, ESQ
Florida Bar No. 110019
Primary E-Mail: rhermann@sbwh.law
Secondary E-Mail: floridaservice@sbwh.law
GENEVIEVE LEE TURNER, ESQ.
Florida Bar No. 100058
Primary E-Mail:  gturner@sbwh.law
Secondary E-Mail:  ksandoval@sbwh.law
CHARLES BLAKE DYE, ESQ.
Florida Bar No. 500461
Primary E-Mail: bdye@sbwh.law

IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT, IN AND FOR PALM
BEACH COUNTY, FLORIDA

CASE NO.: 50-2022-CA-005712-XXXX-MB

DIVISION: AK

NEUROSURGICAL CONSULTANTS OF
SOUTH FLORIDA, L.L.C.,

      Plaintiff,

vs.

UNITEDHEALTHCARE INSURANCE
COMPANY, a foreign corporation,

      Defendant.

_____/

### PLAINTIFF'S FIRST REQUESTS FOR ADMISSION TO DEFENDANT UNITEDHEALTHCARE INSURANCE COMPANY

Pursuant to Rule 1.370, Florida Rules of Civil Procedure, Plaintiff Neurosurgical Consultants of South Florida, L.L.C. ("Plaintiff") hereby requests Defendant, UnitedHealthcare Insurance Company ("Defendant"), make the following admissions in writing within forty-five (45) days of service:

### DEFINITIONS

1.    *Person.* The term "person" is defined as any natural person or business, legal or governmental entity or association.

2.    *Plaintiff.* The term "Plaintiff" shall refer to Plaintiff Neurosurgical Consultants of South Florida, L.L.C., and any of its former or present officers, directors, partners, employees, agents, members, any corporations or entities now or formerly affiliated with it, and all other persons or entities acting on its behalf.

3.    *You/Your/Defendant.* The terms "you," "your," and/or "Defendant" shall mean Defendant UnitedHealthcare Insurance Company, and any of its former or present officers, directors,

Shapiro, Blasi, Wasserman & Hermann, P.A.
Attorneys for Plaintiff

       partners, employees, agents, members, any corporations or entities now or formerly affiliated with it, and all other persons or entities acting on its behalf.

4.    *Complaint.* The term "Complaint" means and refers to the Complaint and Demand for Jury Trial filed by Plaintiff in this Lawsuit on or about June 15, 2022.

5.    *Lawsuit.* The term "Lawsuit" means and refers to Case No. 50-2022-CA-005712-XXXX-MB, *Neurosurgical Consultants of South Florida, L.L.C. v. UnitedHealthcare Insurance Company*, pending in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida.

6.    *Medical Services.* The term "Medical Services" means and refers to any medical treatment or health care, including but not limited to, hospital services and facility charges, surgery, office visits, testing, medications, injections, implants, medical devices, nursing services, examinations, supplies and other medical services, whether in-patient or out-patient, that are otherwise the subject of the Medical Claims defined herein.

7.    *Medical Claim.* The term "Medical Claim" means and refers to any claim for payment of Medical Services that Plaintiff submitted to Defendant for processing and payment, whether paper or electronic, and that forms the basis, in whole or in part, of Plaintiff's legal claims against Defendants in this Lawsuit.

8.    *CPT Code.* The term "CPT Code" means and refers to any medical billing code within the List of Current Procedural Terminology Codes maintained by the Centers for Medicare & Medicaid Services.

9.    *HCPCS Code.* The term "HCPCS Code" means and refers to any medical billing code with the List of Healthcare Common Procedure Coding System Codes maintained by the Centers for Medicare & Medicaid Services.

10.   *FAIR Health.* The term "FAIR Health" means and refers to the national, independent, not-for-profit corporation that provides data and other information about healthcare costs and health insurance. *See* https://www.fairhealthconsumer.org/glossary.

11.   *Data iSight.* The term "Data iSight" means and refers to the claims evaluation and pricing service often used by payers like Defendants to review claims submitted by Out-of-Network Providers. *See* https://www.multiplan.us/services/analytics-based/data-isight/.

12.   *Geozip.* The term "Geozip" means and refers to a geographic area based on the first three numbers of a zip code.

13.   *And/Or.* "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to call for information that might otherwise be construed to be outside the scope of these Requests. Similarly, references to the singular include the plural, and references to the plural include the singular. Also, the past verb tense includes the present, and the present verb tense includes the past.

14.    *Out-of-Network Provider.* The term "Out-of-Network Provider" means a physician or other medical provider who does not participate in Defendant's provider networks. This means that the provider has not signed a contract agreeing to accept Defendant's negotiated prices.

<u>**INSTRUCTIONS**</u>

1.    If, in answering any of these Requests, you encounter any ambiguity in construing either the Request or a definition or instruction relevant to the inquiry contained in the Request, set forth the matter deemed ambiguous and the construction selected or used in responding to the Request.

2.    These Requests are submitted for the purpose of discovery and are not to be taken as waiving any objections which may be made at trial to the introduction of evidence on subjects covered by these Requests or as an admission of the relevance or materiality at trial of any of the matters covered by these Requests.

## <u>REQUESTS FOR ADMISSION</u>

1. Admit that the reimbursement rates at which You paid Plaintiff for the Medical Services at issue in Plaintiff's Complaint were based on the Medicare reimbursement rates for those Medical Services.

2. Admit that the reimbursement rates at which You paid Plaintiff for the Medical Services at issue in Plaintiff's Complaint were based on the FAIR Health estimate of the allowed amount for those Medical Services.

3. Admit that the reimbursement rates at which You paid Plaintiff for the Medical Services at issue in Plaintiff's Complaint were based on Data iSight data for those Medical Services.

4. Admit that the reimbursement rates at which You paid Plaintiff for the Medical Services at issue in Plaintiff's Complaint were based on the "usual and customary charges," as defined in *Baker County Medical Services, Inc. v. Aetna Health Management, LLC*, 31 So. 2d 842, 845–46 (Fla. 1st DCA 2010), for those Medical Services.

5. Admit that the Geozip You used in calculating the reimbursement rates at which You paid Plaintiff for the Medical Services at issue in Plaintiff's Complaint was 334.

6. Admit that You paid Plaintiff for the Medical Services at issue in Plaintiff's Complaint as an Out-of-Network Provider.

7. Admit that the Medical Services at issue in Plaintiff's Complaint were "emergency services and care" as defined in section 641.47(8), Florida Statutes.

8. Admit that the health insurance policy referenced in paragraphs 27 through 28 of Plaintiff's Complaint was a group health insurance policy regulated by Chapter 627, Florida Statutes.

9. Admit that the health insurance policy referenced in paragraphs 27 through 28 of Plaintiff's Complaint was an individual health insurance policy regulated by Chapter 627, Florida Statutes.

Dated: August 10, 2022

<div style="margin-left: 40%;">

**SHAPIRO, BLASI, WASSERMAN & HERMANN, P.A.**
*Attorneys for Plaintiff*
7777 Glades Road, Suite 400
Boca Raton, Florida 33434
Telephone:   (561) 477-7800
Facsimile:        (561) 477-7722

By:   *Genevieve Lee Turner*
     RICHARD P. HERMANN, II, ESQ
     Florida Bar No. 110019
     Primary E-Mail: rhermann@sbwh.law
     Secondary E-Mail: floridaservice@sbwh.law
     GENEVIEVE LEE TURNER, ESQ.
     Florida Bar No. 100058
     Primary E-Mail:  gturner@sbwh.law
     Secondary E-Mail:  ksandoval@sbwh.law
     CHARLES BLAKE DYE, ESQ.
     Florida Bar No. 500461
     Primary E-Mail: bdye@sbwh.law

</div>